IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STANLEY WALTON,                    §
                                   §
                    Plaintiff,     §
                                   §  Civil Action No. 3:10-CV-0815-D
VS.                                §
                                   §
MICHAEL J. ASTRUE,                 §
COMMISSIONER OF SOCIAL             §
SECURITY,                          §
                                   §
                    Defendant.     §

MEMORANDUM OPINION

Plaintiff Stanley Walton ("Walton") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Walton was 47 years old at the time of the alleged onset of his disability in June 2006. He attended school through the eleventh grade and later received his GED. Since the alleged onset date of June 22, 2006, he has not engaged in any substantial gainful activity. On July 11, 2006 Walton filed an application for a period of disability and disability insurance benefits. His application was denied initially and upon reconsideration. Following a hearing, an Administrative Law Judge ("ALJ") found that

Walton was not disabled under the Act from the alleged onset date through the date of the decision.

The ALJ's decision followed the five-step sequential process for determining disability. *Leggett v. Chater*, 67 F.3d 558, 563 (5th Cir. 1995). At step one, the ALJ found that Walton had not engaged in substantial gainful activity since the alleged onset date. At step two, he found that Walton had the following severe impairments: alcoholic dementia, Wernickes encephalopathy, and glaucoma. At step three, he determined that, singularly or in combination, his impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Walton had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) (2010), with the following limitations: he could sit for three hours at a time, for a total of six hours, in an eight-hour workday, and walk one hour without interruption in an eight-hour workday; he is precluded from using left foot controls and occasionally right foot controls; he could occasionally climb stairs and ramps at a reasonable pace with a hand rail, balance, kneel, crouch or crawl; he is precluded from climbing ladders, ropes or scaffolds; he is unable to read fine print, newspaper or book print, but could view a computer screen; he needs to avoid hazardous things in the workplace; he could hear and understand simple instructions and information; he could determine differences

in the shape and color of small objects with the right, but not the left, eye; he is unable to work at unprotected heights and around hazardous moving parts; he is precluded from exposure to wetness, dust, gases, vibration and extreme heat, and could be exposed only to moderate noise; and he is precluded from traveling without an assistant, and he cannot use public transportation. At step four, the ALJ found that Walton was unable to perform his past relevant work as a service dispatcher. At step five, the ALJ determined that Walton is not disabled because he can perform jobs that exist in the national economy in significant numbers. These jobs included working as a call out operator, counter clerk, and furniture rental clerk.

Walton seeks judicial review of the Commissioner's adverse decision. First, he argues that the ALJ should have found that he was disabled because his mental impairments preclude him from traveling without an assistant or taking public transportation. Because of these limitations, Walton argues that he is unable to ambulate effectively and is therefore presumptively disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1. Second, Walton posits that the ALJ did not consider his inability to avoid ordinary hazards in the workplace when determining the occupational base available to him. Third, Walton maintains that, in determining Walton's RFC, the ALJ did not sufficiently consider his mental impairments, including memory loss, low intellectual functioning,

inability to use judgment in making work-related decisions, inability to respond appropriately to supervision and instruction, and inability to adapt to changes in a work routine.

The Commissioner responds that there is substantial evidence to support the ALJ's step three determination that Walton does not have an impairment or combination of impairments that meet or equal the requirements of listed impairments for presumptive disability under the Act. Specifically, the Commissioner argues that Walton's ability to walk makes him able to ambulate effectively under the Act despite his mental limitations. The Commissioner also argues that the ALJ properly consulted a Vocational Expert ("VE"), who opined that Walton should avoid ordinary hazards in the workplace, but also testified that Walton could perform unskilled light and sedentary work sufficiently available in the national economy despite his visual limitations. Finally, the Commissioner maintains that substantial evidence supports the ALJ's step five determination that Walton is not disabled because he can perform other work existing in substantial numbers in the national economy. The Commissioner maintains that the ALJ's hypothetical question to the VE included all of Walton's limitations, including his mental limitations. The Commissioner argues that the ALJ properly relied on evidence showing that Walton is able to think and carry out normal activities most of the time, that Walton suffers from no significant mental impairment, and that any difficulty related to

his memory is associated with ongoing alcohol abuse. The Commissioner also argues that Walton failed to carry his burden of showing that he cannot perform the work the ALJ determined is available at Walton's RFC level in substantial numbers in the national economy.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d

at 563; *Martinez,* 64 F.3d at 173-74.  The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2010).  "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).  At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.  The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

## III

### A

Walton first argues that the ALJ should have found that he was disabled because his mental impairments preclude him from traveling without an assistant or taking public transportation. Walton maintains that, because of these limitations, he is unable to ambulate effectively and thus is presumptively disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1. He contends that although the ability to ambulate generally depends on a claimant's ability to walk, it can also be determined by a claimant's ability to use public transportation. Walton maintains that although he is able to walk, his poor memory makes him unable to use public

transportation.  He argues that his inability to use public transportation makes him unable to ambulate effectively under the Act.  Walton posits that the VE's hearing testimony that he would have to rely on others for transportation to and from work supports the position that he cannot ambulate effectively.  Because his mental limitations result in physical limitations, Walton maintains that the ALJ should have found his mental impairments medically equivalent to one of the physical body system listings.

The Commissioner responds that Walton is able to ambulate effectively because he can walk and he is not physically disabled.  Moreover, the Commissioner argues, even if Walton's mental limitations make him unable to ambulate effectively, the inability to ambulate effectively does not alone establish that he is disabled because he must meet all the requirements of a listed condition to establish presumptive disability.  Alternatively, the Commissioner maintains that even if the court considers Walton's mental limitations in determining whether he is able to ambulate effectively, he has not shown that his impairments are medically equivalent to a listed impairment.

B

Walton argues that he is disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1 because he cannot effectively ambulate, and specifically, because he cannot use public transportation without assistance.  The ability to use public transportation is, as Walton

suggests, one example of effective ambulation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00(B)(2)(b)(2) (2010) ("[E]xamples of ineffective ambulation include . . . inability to use standard public transportation[.]"). For purposes of the criteria for effective ambulation listed in 1.00(B)(2), however, "consideration of the ability to perform these activities must be from a physical standpoint alone." *Id*. 1.00(B)(2)(a). "When there is an inability to perform these activities due to a mental impairment, the criteria in 112.00ff are to be used." *Id*. Section 12.00 lists the mental disorders that make a claimant presumptively disabled, and the inability to ambulate effectively is not a criterion for any of these disorders. *See id.* at 12.00. As Walton argues, however, an ALJ "may also consider mental impairments under physical body system listings [like 1.00(B)(2)(b), describing effective ambulation], using the concept of mental equivalence, when the mental disorder results in physical dysfunction." *Id*. at 12.00(A). This language in the regulations is permissive, and the ALJ was not required to consider whether Walton's mental impairments were medically equivalent to one of the listed physical impairments.

Substantial evidence supports the ALJ's determination that Walton's limitations did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. First, no treating physician has opined that Walton is disabled. To show medical equivalence, a claimant must provide medical

findings that support each of the criteria for the medical equivalence determination. *See Selders v. Sullivan*, 914 F.2d at 619 (5th Cir. 1990) (per curiam); *see also Ranes v. Astrue*, 2009 WL 2486037, at *6 (N.D. Tex. Aug. 14, 2009) (Fitzwater, C.J.) (holding that claimant challenging step three determination must "provide and identify medical signs and laboratory findings that support all criteria for a Step 3 impairment decision.") (internal quotation marks omitted).

Walton argues he is unable to ambulate effectively, but he has not argued medical equivalence to the other elements of any particular listed impairment. The ALJ considered the medical equivalence of his impairments to Listings 2.00, 11.00, and 12.00. Listing 2.00 identifies presumptive special sense and speech disabilities. Under Listing 2.02, for loss of visual acuity, a claimant is presumptively disabled when "remaining vision in the better eye after best correction is 20/200 or less." Walton's examination at the VA Medical Center on August 31, 2006 revealed his vision to be 20/40 after best correction. On September 11, 2008 Jewel S. Daughety, M.D. ("Dr. Daughety") conducted a consultative examination and found that Walton's best corrected vision in his better eye to be 20/60. Thus Listing 2.02 is inapplicable. Under Listing 2.03, for contraction of the visual field in the better eye, a claimant is presumptively disabled when angles of sight and total visual area are extremely limited in the

better eye.  Under Listing 2.04, a claimant is presumptively disabled when his visual efficiency in the better eye is 20% or less.  As the ALJ found, although Walton's vision in his left eye is severely impaired, there is no evidence of serious problems with the right eye.  The remaining presumptive disabilities under Listing 2.00 relate to hearing loss, and there is no record evidence that Walton's hearing is impaired.

The ALJ also considered the medical equivalence of Walton's impairments to Listings 11.00 and 12.00.  Listing 11.00 includes neurological disorders like epilepsy, brain tumors, multiple sclerosis, and Parkinson syndrome.  There is no medical evidence in the record to support a claim that Walton suffers one of these impairments, and he has not argued that he does.  The ALJ also considered whether Walton is presumptively disabled under Listing 12.00 for mental disorders.  He found that Walton exhibited Part A signs and symptoms of Listings 12.02 (organic mental disorders) and 12.05 (mental retardation), resulting in Part B restrictions, including mild limitations in his ability to perform daily life activities, moderate limitations in his ability to maintain social functioning, and moderate limitations in his ability to maintain concentration, persistence, and pace.

These limitations do not medically equal Listings 1.03, 1.04, or 1.05.  Each of these Listings requires that the claimant show another serious physical impairment in addition to his inability to

ambulate effectively.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.03-1.05 (requiring reconstructive surgery, spinal injury, or amputation in addition to inability to ambulate effectively to establish presumptive disability).  An impairment is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a) (2006).[*]  But a claimant "cannot qualify

---

[*]Medical equivalence can be found in three ways:

(1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but——

(A) You do not exhibit one or more of the findings specified in the particular listing, or

(B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments,

under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Carrillo v. Astrue*, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). *See also* Social Security Ruling ("SSR") 83-19, 1983 WL 31248, at *3 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment [.] . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence.") (emphasis in original). Walton's physicians have not made medical findings "equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526 (2010). In the absence of such findings, there is substantial evidence to support the ALJ's determination that Walton's limitations do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

---

no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b) (2006).

based on the overall functional consequences of his mental impairments.

IV

A

Walton next contends that the ALJ did not properly consider his inability to avoid ordinary hazards in the workplace when determining the occupational base available to him.  He posits that the ALJ acknowledged that his visual impairments would make him unable to avoid ordinary workplace hazards, and that the ALJ's hypothetical considered an individual who should avoid ordinary workplace hazards like boxes on the floor, doors ajar and approaching people or vehicles.  Walton argues, however, that he is unable to avoid such ordinary workplace hazards, and that this limitation greatly erodes his occupational base, and that the ALJ erred in failing to ask the VE about the effects of this limitation on his occupational base.  Walton relies on SSR 85-15, 1985 WL 56857 (1985), for the proposition that his opportunities to work in the national economy are greatly reduced because of the inability to avoid ordinary workplace hazards due to his visual impairments.

The Commissioner responds that Walton's visual impairment does not greatly erode the available occupational base.  The Commissioner maintains that the ALJ properly described all of Walton's visual conditions when he posed his hypothetical question to the VE, and that the ALJ and the VE properly considered how

Walton's limitations would affect the available occupational base. Further, the Commissioner argues that the VE appropriately found that Walton could perform unskilled light and sedentary work in the national economy despite his visual limitations. The Commissioner also contends that the VE is best suited to evaluate the occupational base available to Walton. Finally, the Commissioner argues that SSR 85-15 does not support Walton's position because it states only that a substantial number of jobs are available to a claimant who can avoid ordinary hazards in the workplace, not that the occupational base of a claimant unable to avoid ordinary workplace hazards is necessarily insufficient to allow him to work.

B

The court holds that the ALJ properly considered how Walton's visual impairments could affect the available occupational base. The ALJ incorporated all of Walton's visual limitations into the hypothetical he posed to the VE. The hypothetical described an individual who is unable to read small print, operate a motor vehicle, or work at unprotected heights, with moving parts, or in heat, cold, or humidity. The hypothetical included Walton's inability to determine differences in shapes and colors of small objects with his left eye, and his inability to use public transportation. The hypothetical also described an individual who "should avoid ordinary hazards in the workplace such as boxes on the floors, doors ajar or approaching people or vehicles." R. 42.

The VE responded that such an individual would be unable to perform Walton's past relevant work, but would be able to perform a number of jobs available in the national economy, including the positions of call out operator, counter clerk, or furniture rental clerk.

Walton's reliance on SSR 85-15 is misplaced. SSR 85-15 explains that "as long as [a claimant] retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels." SSR 85-15, 1985 WL 56857, at *8 (1985). The ruling also states that a disability finding "could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential." *Id.*

There is substantial evidence that Walton is able to avoid ordinary workplace hazards. When the ALJ presented a hypothetical to the VE, the VE agreed that Walton "should avoid ordinary hazards in the workplace," R. 42, but he did not indicate that Walton is unable to do so. Indeed, the evidence indicates that Walton retains, as SSR 85-15 explains, "the visual fields to avoid ordinary hazards in the workplace." SSR 85-15, 1985 WL 56857, at *8. Walton has reported that he is able to drive short distances

and to use his hands, do yard work, read the newspaper, and complete basic personal care tasks. At the hearing, he testified that his abilities are more limited. The ALJ found, however, that Walton's testimony was varied and not entirely credible. For example, at different times he reported that he could not remember long enough to complete tasks he had begun, but that he could sometimes drive short distances. Moreover, the VE testified that Walton could work as a call out operator, as a counter clerk, or as a furniture clerk, even given his visual impairments. Walton has not argued that he is unable to perform jobs like these. The record evidence does not, as SSR 85-15 contemplates, describe one of the "relatively few instances in which the claimant's vocational profile is extremely adverse." *Id.*

V

A

Finally, Walton argues the ALJ did not sufficiently consider his mental impairments, including his memory loss, low intellectual capacity, inability to use judgment in making work-related decisions, inability to respond appropriately to supervision and instruction, and inability to adapt to changes in a work routine, in determining Walton's RFC. Walton maintains that he lacks the capacity to perform the mental demands of employment. Relying on SSR 96-8p, Walton argues that the ALJ should have evaluated whether he is capable of performing the four mental demands of competitive

employment: (1) dealing with changes in a routine work setting; (2) responding appropriately to supervisors and coworkers; (3) using judgment in making work-related decisions; and (4) understanding, remembering, and carrying out instructions.  Walton argues that the ALJ erred when he considered only whether Walton could understand, remember, and carry out instructions, and that a claimant's inability to meet any of the four basic demands severely limits the claimant's occupational base and makes him unable to perform other work.  He also contends that the ALJ improperly failed to include in his hypothetical to the VE what effect Walton's low intellectual functioning might have on his ability to work.  Walton posits that the ALJ should have included Walton's IQ scores in the hypothetical.  The examination of consulting psychologist Lawrence Muirhead, Ph.D. ("Dr. Muirhead") placed Walton's Verbal Scale IQ at 79, his Performance Scale IQ at 77, and his Full scale IQ at 76.  Relying on *Swope v. Barnhart*, 436 F.3d 1023 (8th Cir. 2006), Walton argues that the ALJ was required to include in the hypothetical his low intellectual functioning because the condition was supported by substantial evidence in the record as a whole.

The Commissioner responds that the ALJ properly considered all of Walton's limitations, including his mental limitations.  The Commissioner posits that the ALJ's hypothetical to the VE incorporated all of Walton's limitations, including his memory loss, intellectual capacity, and ability to respond and use

judgment in the workplace.  Further, the Commissioner maintains that SSR 96-8p distinguishes between claimant's abilities that the ALJ must consider in deciding whether the claimant is disabled and those he must discuss in his decision.  The Commissioner maintains that the ALJ considered all of Walton's limitations, including his mental and intellectual limitations, before reaching a decision. The Commissioner also posits that the ALJ's evaluation of Walton's limitations as mild and moderate is supported by substantial evidence.  For example, the Commissioner argues that Dr. Muirhead found that Walton did not suffer significant psychological impairments and that his memory difficulties are associated with ongoing alcohol abuse.  The Commissioner also maintains that the VE identified jobs appropriately suited to Walton's mental and intellectual limitations.

B

The court holds that substantial evidence supports the ALJ's RFC determination.  The ALJ stated that he considered all of the medical evidence in the record, including the medical reports of the several psychologists who examined Walton.  He reviewed a CT scan of Walton's head performed at the VA Medical Center-Dallas in late June 2006, which revealed significant brain atrophy consistent with heavy alcohol use.  The ALJ also noted the observations of Mitchell Dunn, M.D. ("Dr. Dunn") that Walton's short-term memory was impaired and that his cognitive problems would worsen if his

alcohol dependence continued. The ALJ also reviewed the findings of Dr. Muirhead who, in contrast, found no conclusive evidence of significant memory impairment, and who also associated Walton's mental difficulties with his ongoing alcohol use, noting that Walton had consumed beer on the morning of his evaluation. The ALJ also noted that the state agency medical consultants found that Walton retained the ability to understand, remember and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, and interact with others and respond to changes in the work setting. Robert White, Ph.D., who examined Walton, found that he was not significantly limited in his abilities to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal work-day and work-week without interruptions from psychologically based symptoms. Moreover, the ALJ found that Walton's testimony about the severity of his limitations was not entirely credible because he stated at different times that he could not remember to complete tasks he had begun but also that he could make sandwiches for himself during the day, drive short distances, and complete other household tasks. The ALJ properly incorporated this evidence in the hypothetical and RFC, when he described a claimant who could "hear and understand simple oral

instructions and . . . communicate simple information." R. 15, 42.

Further, the ALJ's decision satisfies the narrative discussion requirements of SSR 96-8p, 1996 WL 374184 (July 2, 1996). SSR 96-8p provides that the ALJ must consider work-related mental activities, including the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. SSR 96-8p states the ALJ's "narrative discussion requirements" differently. The ALJ's decision must discuss "how the evidence supports each conclusion"; objective medical and other evidence; resolution of inconsistencies in the evidence as a whole; and a logical explanation of the effects of the claimant's symptoms on his ability to work. *Id.* at 7. That is, the narrative discussion requirements do not obligate the ALJ to discuss each of the four work-related mental activities.

Nevertheless, the record supports the conclusion that the ALJ considered each of these four work-related mental activities. He considered the opinions of Drs. Dunn and Muirhead relating to Walton's ability to remember and act on instructions. Dr. Muirhead's opinion indicated that Walton's understanding of socially appropriate behavior, like interactions with supervisors and coworkers in the workplace, remained within normal limits. Moreover, the ALJ's decision states that he considered the state

agency examiner's reports that Walton was only moderately limited in his example concerning accepting instructions and responding appropriately to supervisors, and responding to changes in the work setting. As discussed above, the ALJ evaluated the opinions of Walton's examining physicians and psychologists. Further, the decision met the narrative discussion requirements of 96-8p. The ALJ considered all of Walton's medical records. He resolved inconsistencies in the evidence as a whole, for example, by determining that not all of Walton's testimony relating to his limitations had been credible. And he explained, in formulating the RFC, that Walton's mental limitations made him able to understand only simple oral instructions and to communicate only simple information. The ALJ's decision and formulation of Walton's RFC thus meets the requirements of SSR 96-8 and are supported by substantial evidence.

\*    \*    \*

For the reasons explained, the Commissioner's decision is AFFIRMED.

January 20, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE